Filed 7/28/23  Patel v. City of Long Beach CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| JAYANTIBHAI PATEL et al., | B317168 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. 19STCP05678) |
| CITY OF LONG BEACH, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mitchell L. Beckloff, Judge.  Affirmed.

Law Offices of Frank A. Weiser and Frank A. Weiser for Plaintiffs and Appellants.

Office of the Long Beach City Attorney, Charles Parkin, City Attorney, Dawn McIntosh, Gary J. Anderson and Arturo D. Sanchez, Deputy City Attorneys; Best Best & Kreiger, Christopher M. Pisano, Alexander M. Brand and Anya Kwan for Defendant and Respondent.

———————————————

# INTRODUCTION

Appellants Jayantibhai Patel and Daksha Patel (collectively, the Patels; individually, Jayantibhai and Daksha[1]) operated the Princess Inn motel located in Long Beach, California. Respondent City of Long Beach (City) revoked the motel's business license in 2008 after an administrative hearing before an appointed hearing officer and a city council vote to accept the hearing officer's recommendation of revocation. The Patels challenged the license revocation in a petition for writ of administrative mandate, which the superior court denied.

The Patels now appeal the denial of their writ petition. They do not challenge the sufficiency of the evidence supporting the findings made by the hearing officer, nor do they contend those findings do not support City's decision to revoke the license. Instead, they raise a series of arguments focused on the process that led to the license revocation. We find no merit in these arguments and therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    City Issues a Business License for the Motel

The administrative record of the proceeding to revoke the Patels' business license shows the following. In January 2003, City issued Jayantibhai a business license to operate the Princess Inn. City personnel contacted Jayantibhai in the fall of 2003 regarding illegal drug activity and prostitution at the motel, and on October 15, 2003, the City Attorney's Office sent a letter to Jayantibhai ordering him to abate the nuisance posed by these

---

[1] We use the Patels' first names for ease of reference. No disrespect is intended.

2

activities. An administrative hearing was held in February 2004, after which the motel was found to be a nuisance and Jayantibhai assessed $3,628 in fines and penalties.

## B. Initial Revocation Proceeding

In July 2007, City's police department submitted a request to City's director of financial management to revoke the motel's business license. As relevant here, Long Beach Municipal Code (LBMC) section 3.80.429.1 authorizes the director of financial management, "upon hearing," to revoke or suspend a business license when the licensee "fails to comply . . . with any . . . provision or requirement of law, including, but not limited to, th[e LBMC] and any grounds that would warrant the denial of initial issuance of a license [under the LBMC]." The police department request was based on claims that Jayantibhai allowed prostitution and illegal drug activity to occur at the motel, and that the police department had frequently responded to calls for service at the motel involving "noise, fighting, assaults, domestic violence, gang associations (Rollin' 20's Crips), drug activity and prostitution."

City's Department of Financial Management initiated revocation proceedings and designated a private attorney, Michelle M. Lents, Esq., as the hearing officer. Lents held a hearing on October 3, 2007; the Patels were present but were not represented by counsel. Jayantibhai testified during the hearing. On October 16, 2007, Lents issued a seven-page written report summarizing the evidence presented and recommending that City revoke the business license.

On October 23, 2007, the Department of Financial Management notified the Patels that it had revoked their business license, and that they had a right to appeal the matter

3

to the city council under LBMC section 3.80.429.5. That section provides for a second hearing de novo at which "the appellant or its authorized representative shall have the right to present evidence and a written or oral argument, or both."

## C. The Administrative Appeal and Second Administrative Hearing

The Patels requested an appeal hearing and City appointed Ronald Sokol, a private attorney, as the hearing officer.[2] Sokol held a three-day hearing in February 2008. As Sokol noted in his final recommendation, the proceeding before him was a " '*trial de novo*.' " The Patels appeared and were represented by counsel. As the hearing before Sokol led to the action challenged by the writ petition, we summarize the evidence presented.

### 1. *Officer Ryan Lee*

City police department officer Ryan Lee testified that in 2005 he became familiar with the Princess Inn by "responding to numerous calls for service in that location . . . dealing with street-level narcotics users and prostitutes." While on patrol, Officer Lee recalled service calls to the Princess Inn involving alleged assaults, child abuse, public intoxication and littering, in addition to narcotics crimes and prostitution.

Two confidential informants whom Officer Lee believed to be reliable told him that Jayantibhai was involved in and

_____

[2] City appointed Sokol pursuant to LBMC section 2.93.050(A), which states: "Whenever it is provided that a hearing governed by this [c]hapter shall be heard by the [c]ity [c]ouncil, the [c]ouncil may, in its discretion, either conduct the hearing itself or appoint a [h]earing [o]fficer to conduct the hearing."

coordinated prostitution and narcotics sales at the motel, and that he rented rooms, particularly room number 24, by the hour to prostitutes. The confidential informants also reported that Jayantibhai coordinated with a Rolling Crips gang member and a motel employee, Tafailagi Milo, to sell narcotics at the motel.

On January 14, 2007, Officer Lee went to the motel and determined that Milo was residing there.

In February 2007, the motel became the focus of a Community Oriented Public Safety (COPS) project designed to address neighborhood nuisance problems. Officer Lee and his partner, Officer Matthew Kennison, were in charge of this COPS project. On February 15, 2007, Officer Lee went to the motel with Officer Kennison, City Neighborhood Nuisance Abatement officer Rita Hooker,[3] and City health and fire inspectors. They inspected five to seven guest rooms that Jayantibhai told them were ready to be rented; in each of the rooms the group found drug paraphernalia, including glass pipes. Officer Lee also observed the motel on three or four other occasions, for two to three hours each time, and "saw numerous people that [he] recognized as street-level narcotics users, sellers and prostitutes." He "saw two individuals, both [of] whom [he knew] to be prostitutes, walking in and out of the hotel on several occasions during that period with different men." The prostitutes usually went into guest room number 24.

Officer Lee arranged to have Detective Heather Rebbeck work undercover posing as a prostitute to determine if Jayantibhai was renting rooms by the hour. On June 23, 2007, Detective Rebbeck informed Officer Lee that she had rented room

---

[3] Hooker is not a sworn peace officer.

5

number 24 while working undercover.  Officer Lee asked Jayantibhai for the registration cards for all of the rooms; Jayantibhai complied but did not hand over a card for room number 24.  Officer Lee asked Jayantibhai if he had a card for room number 24, and he replied "no."  Officer Lee said he had spoken to someone who told him they had stayed in room number 24, and Jayantibhai stated he had not rented the room all day.[4]

Also on June 23, 2007, Officer Lee arrested Milo for selling cocaine based on a report from Detective Rebbeck (that drug sale incident is further described below).  Officer Lee had seen Milo staying at the motel for more than a year, and Milo confirmed this fact to Officer Lee.  Milo represented herself as an employee of the motel doing security and cleaning, and Officer Lee had several times seen her in the motel office, which was not accessible by the public.  According to Officer Lee's report, Milo "admitted that she picks up and delivers rock cocaine on a frequent and daily basis to people staying at the Princess Motel.  Milo said that [Jayantibhai] is well aware of the sale and usage of rock cocaine in the motel and is intimately involved in it.  Milo said [Jayantibhai] only allows certain people to sell, for which he receives compensation from the dealers.  Milo said [Jayantibhai] frequently and on a daily basis rents motel rooms by the hour to people he knows to be prostitutes."

Officer Lee testified that he had many contacts with "a prostitute and daily rock cocaine user," who told Officer Lee that

---

[4] During the re-direct examination of Officer Lee, City introduced a registration card Jayantibhai had produced at the initial administrative hearing on October 3, 2007.  The card showed that room number 24 had been rented on June 23, 2007, with a "Date Out" of June 24.

she took her clients to rooms at the Princess Inn and "[t]he owner looks the other way and takes money from her for allowing her to do it."

Officer Lee also testified about other specific times he went to the motel, and authenticated reports he had prepared regarding his visits. On January 19, 2007, Officer Lee arrested a motel guest who had an outstanding arrest warrant for felony robbery. Officer Lee also interpreted a two-page computer-generated report which listed incidents where police were called to the Princess Inn from January 2006 through September 2007.

On cross-examination, Officer Lee indicated that he closed his investigation of the Princess Inn in about June 2007, and did not know whether the conditions at the motel had changed since that time. He refused to identify the confidential informants he had relied upon or provide information regarding their backgrounds. Officer Lee confirmed that Jayantibhai had not been cited for any violations during the COPS project investigation during 2007, explaining that the goal of the project was to compile evidence regarding the motel operations. Officer Lee also agreed that he had not identified for Jayantibhai drug dealers or prostitutes that Jayantibhai should not allow to stay at the motel.

2.    *Detective Heather Rebbeck*

Detective Rebbeck testified about two undercover operations in which she posed as a prostitute and rented rooms at the Princess Inn for periods of less than an hour. The first time, on May 4, 2007, Detective Rebbeck and another undercover officer rented room number 24 from Jayantibhai at around 1:25 p.m.; the other undercover officer filled out a registration card, and Detective Rebbeck told Jayantibhai that she only needed the

7

room for an hour. Detective Rebbeck returned the key to Jayantibhai a little more than 30 minutes later. Later that same afternoon, Detective Rebbeck went back to the motel with a third undercover officer. When they arrived, they observed a male and a female walk into room number 24 and close the door. This appeared to violate LBMC section 5.48.010(C), which prohibits motels and hotels from renting a room more than once in a 12-hour period. At the motel office, Detective Rebbeck asked for another room for an hour and Jayantibhai rented them room number 7; the other undercover officer filled out the registration card. Approximately 20 minutes later Detective Rebbeck returned the key to Jayantibhai.

The second undercover operation took place on June 23, 2007. At approximately 1:45 p.m., Detective Rebbeck went with a different undercover officer and asked Jayantibhai for a room for an hour, and he rented them room number 24; the other undercover officer filled out a registration card. Detective Rebbeck returned the key to the office, where Daksha was stationed, a little more than 30 minutes later. At around 5:00 p.m. that day, Detective Rebbeck returned to the motel with a different undercover officer. At the motel office, they asked Jayantibhai for a room for an hour and he rented them room number 10; the other undercover officer filled out the registration card. This registration card showed a room charge of $50, but Detective Rebbeck testified that she paid only $20.

After being in room number 10 for a few minutes, Detective Rebbeck went to the motel office where she found Daksha and asked for "Poppy," which she understood was a nickname for Jayantibhai. Daksha told her that he had left. As Detective Rebbeck was walking back to the room, Milo contacted her and

8

said, "Can I help you with something?" Detective Rebbeck explained she was looking for Poppy, and Milo said, "Let me see if I can find him because I work here." Milo walked to the door which led to the Patels' residence next to the motel office and spoke with someone. Milo then returned and asked if she could assist Detective Rebbeck. Detective Rebbeck asked Milo if she could get rock cocaine, and Milo told Detective Rebbeck to leave $40 on a plastic table outside of Milo's room. Detective Rebbeck left $40 as instructed and a short time later Milo delivered the rock cocaine to Detective Rebbeck in room number 10. At that point, Detective Rebbeck alerted other officers who went to room number 10 and arrested Milo.[5]

Detective Rebbeck also testified that the rooms she rented at the Princess Inn were "foul," with dried blood on some of the sheets, uncleaned toilets and trash left uncollected.

On cross-examination, Detective Rebbeck agreed that, on May 4, 2007, she did not check the registration cards to determine if the two people she had seen entering room number 24 had in fact rented the room, and she did not speak to them. Detective Rebbeck also explained that her posing as a prostitute consisted of "renting rooms for an hour at a time with a different man on different occasions." She did not tell Jayantibhai that she was a prostitute or use any code words.

---

[5] At City's request, the hearing officer took judicial notice of a certified court record showing Milo pleaded no contest to a charge under Health and Safety Code section 11352, subdivision (a) (transporting, importing, selling, etc. a controlled substance) on June 23, 2007.

### 3. *Neighborhood Nuisance Abatement Officer Rita Hooker*

Hooker testified about the prior nuisance abatement proceeding in 2003-2004 and resulting fines and penalties. Hooker testified she drafted the July 17, 2007 request from the police department to the director of financial management to have the Patels' business license revoked. In preparation for drafting the letter, she reviewed police records which showed approximately 175 calls for service relating to the motel since 2004. In addition, Hooker testified that she was aware a person had died of a drug overdose at the motel in 2004 or 2005, and on an unspecified date a motel guest who was under the influence of cocaine caused a room to catch on fire.

Hooker also testified about the inspection she and several City code inspectors conducted of guest rooms at the Princess Inn on February 15, 2007. Hooker described the two rooms she entered as "filthy" and stated that she saw drug paraphernalia.

On cross-examination, Hooker agreed that she had not notified Jayantibhai in 2007 that he needed to abate the nuisance conditions then existing at the motel. Hooker explained that she did not believe any City action short of revoking the business license would be effective, stating, "I think the problems at this hotel, especially under the management of [Jayantibhai], are too ingrained. The neighborhood knows this is a problem location. Prostitutes know that this is the place to go. Drug addicts know this is the place to go."

### 4. *Motel Residents and Neighbors*

Several motel residents and neighbors testified on behalf of the Patels. Kimberley Anderson testified she had lived at the Princess Inn since August of 2007. Anderson described the

conditions at the motel as "clean" and "quiet." She did not observe any prostitution or drug use and had seen police officers at the property only once. Anderson stated that she noticed suspicious activity on the sidewalk next to the hotel "all night long."

Lupe Bermudez, who had lived in the same neighborhood as the Princess Inn since 2000, also testified for the Patels. Bermudez stated that she had never seen prostitution or drug activity at the motel.

Troy Wince, who had lived at the motel for eight years, testified that from 2003 through September of 2007, he had not observed any prostitution or drug dealing taking place. He had seen police at the motel but had not seen them make any arrests. Wince had observed prostitution and drug activity down the street from the motel, near Pacific Coast Highway. On cross-examination, Wince admitted that police "took [him] in" at some point in 2007 based on a warrant. Wince was also aware that a person nicknamed "Baby" (who other evidence showed was Milo)[6] had been arrested at the motel; Wince estimated that Baby lived at the motel for about six months. Wince had seen Baby cleaning rooms.

Juan Diaz testified he had lived across the street from the Princess Inn since August or September of 2007. Diaz stated he had not seen any prostitutes or drug dealers in the motel's parking lot but had seen them on the street in front of his

---

[6] Detective Rebbeck testified that Milo acknowledged this nickname for her during the June 23, 2007 undercover investigation.

11

residence. On cross-examination, Diaz admitted that he does not know what drug dealers look like.

Albert Mora testified that he had lived across the street from the motel for four years. Mora had not observed any women loitering in the motel's parking lot but had seen that occur on the street near the motel. He had not observed any activities at the motel that he believed were drug transactions.

### 5. *Daksha Patel*

Daksha was the final witness for the Patels. Jayantibhai, who was present during the hearing, did not testify. Daksha stated that she was testifying for both of the Patels, and that Jayantibhai did not speak English well. Daksha testified that she, Jayantibhai, and their two children had lived at the Princess Inn since 2003, and she and Jayantibhai ran the motel. Daksha denied that Milo was a motel employee. Jayantibhai's brothers, Pravin and Dipak Patel, owned the property on which the motel was located, and she and Jayantibhai paid them rent each month. The Patels had a video camera at the motel since 2003 and monitored who came to the motel. They also put in lights on the exterior of their property two to three months before the hearing because people would be in that area. Daksha cleans guest rooms and had not seen drugs or drug paraphernalia. Daksha denied renting guest rooms for short periods of time, or renting rooms out more than once in a 12-hour period. She had never seen drugs being sold or prostitution occurring at the motel; sometimes people being chased by the police would come onto the motel property. Daksha denied that Milo was allowed into the motel's office. Daksha relied on the motel to make a living.

6. *The Parties' Legal Arguments*

The parties submitted post-hearing legal briefs to the hearing officer. In their brief, the Patels raised several procedural arguments pertinent to this appeal.[7] They contended that, under LBMC section 3.80.429.5, the city council was required to conduct the evidentiary hearing itself and could not appoint a hearing officer. They contended that the property owners, Jayantibhai's brothers Pravin and Dipak, had a constitutional right to notice of the proceedings. They contended that LBMC section 5.48.010(E), which required motel and hotel operators to show their guest registration records to law enforcement, violated the Fourth Amendment, although they did not explain how their contention affected City's revocation of their business license. In addition, the Patels contended that the hearing officer should have excluded police records with redactions because the Patels were unable to determine the outcomes of arrests noted in the records. Lastly, the Patels contended that City was required to consider alternative means of enforcement before revoking their business license.

In its brief, City argued that license revocation was justified "[b]ased on the evidence presented of multiple code violations, the sustained pattern of unabated criminal activity, and serious nuisance conditions existing at the Princess Inn." City pointed out that, under LBMC section 2.93.050(A), City was authorized to appoint a hearing officer to preside over the administrative appeal and make a recommendation to the city council. City disputed that the property owners were entitled to

_____

[7] We do not discuss claims the Patels raised before hearing officer Sokol that do not relate to their appellate arguments.

13

notice of the license revocation proceedings, because they had no standing to challenge City's action. Lastly, City contended that it had appropriately redacted from police records "confidential information such as driver's license numbers, social security numbers, victim and witness names and addresses, personal phone numbers, etc.," and argued that the Patels had made no showing how such confidential information was relevant.

## D.    Hearing Officer Sokol Recommends Revocation

On March 14, 2008, hearing officer Sokol issued a 25-page report summarizing the evidence and recommending that City revoke the Patels' business license. Sokol found that "City's witnesses all came across well, without noticeable bias." However, he found that "some of Officer Lee's testimony, and the evidence associated with it, is subject to hearsay and other credibility/reliability objections," because Officer Lee had relied on confidential informants, whose identities he refused to disclose, as well as police records which had some information redacted. Sokol stated, "As such, this portion of [Officer Lee's] testimony was only given the weight to which it is entitled, taking reliability carefully into consideration." The hearing officer noted that Detective Rebbeck's first-hand account of her undercover operations "was not deflected or cast into any real doubt by" the Patels. Sokol found that none of the Patels' witnesses "really denied or could truthfully deny the actual particulars of the many calls that brought law enforcement to the Princess Inn in just the [nine-]month time frame of January through September 2007."

Based on the evidence, hearing officer Sokol concluded that Jayantibhai "participated in or, at minimum, allowed illegal

14

activities to go forward at the Princess Inn, unabated, for a prolonged period of time."

The hearing officer, citing LBMC section 2.93.050(A), rejected the Patels' argument that the city council had to conduct the hearing itself. He also rejected the Patels' argument that the hearing was invalid because the property owners were not given notice, noting that Daksha testified that the brothers were aware of the proceedings, that Jayantibhai led City to believe he owned the property, and that City was seeking only to revoke the Patels' business license and not seeking to take the property away from the brothers.

Responding to the Patels' challenge to LBMC section 5.48.010(E), the ordinance granting law enforcement access to motel/hotel guest registration documents, the hearing officer found that it was "questionable" whether it was appropriate for him to consider a constitutional challenge but, assuming it was appropriate for him to address the issue, the provision was "a reasonable ordinance geared toward assisting the local government in seeking to assure that the operator of a hotel or motel is complying with subsections ([A]) through ([D]) thereof." The hearing officer found no evidence of any "specific, overly intrusive search," and concluded that, "If the challenge is made to [LBMC s]ection 5.48.010([E]) in a kind of vacuum, that is for a [c]ourt to consider."

Addressing the Patels' argument that he should have excluded police records with redactions, the hearing officer indicated that because of the redactions he gave the documents limited weight, and therefore he did not feel compelled to exclude the documents.

15

Finally, hearing officer Sokol found that license revocation was not too harsh a sanction given the facts of the case, including that the Patels "produced no evidence to demonstrate expenditures of monies to maintain and/or improve the Princess Inn" that would be lost from revocation.

## E. The City Council Votes to Revoke the Business License

At a public hearing on April 22, 2008, the city council voted to accept the hearing officer's recommendation to revoke the Patels' business license. Before the vote, Daksha made a brief statement, indicating that any problems came from the streets around the motel, not the motel itself. The following day, City sent a notice to Jayantibhai that the city council had voted to revoke the business license.

## F. The Patels File a Federal Lawsuit Challenging City's Revocation of the Business License

On April 29, 2008, the Patels and Jayantibhai's brothers filed a federal lawsuit asserting various federal constitutional and statutory claims against City related to the license revocation, including a Fourth Amendment challenge to the ordinance granting law enforcement access to motel/hotel guest registration documents. The federal case included, as a supplemental state law claim, a petition for a writ of administrative mandate challenging the license revocation. The district court declined to exercise supplemental jurisdiction over the writ petition and other state law claims. The parties eventually entered a stipulated judgment that awarded the plaintiffs $7,500 in damages for violation of their Fourth Amendment rights related to City employees seizing certain motel registry slips.

16

As permitted in the judgment, the Patels then appealed the district court's ruling declining to exercise supplemental jurisdiction over the writ petition. The Ninth Circuit affirmed in an unpublished decision filed on November 27, 2019. (*Patel v. City of Long Beach* (9th Cir. 2019) 786 Fed.Appx. 126.)[8]

## G. The State Court Writ Petition Proceedings

The Patels filed a petition for writ of administrative mandate in the Los Angeles Superior Court on December 31,

_____

[8] While the Patels were litigating the federal lawsuit they continued to operate the Princess Inn. On October 15, 2018, City filed a state court civil nuisance action against the Patels and Jayantibhai's brothers alleging that operation of the motel without a business license constituted a nuisance under LBMC sections 1.32.010 and 3.80.210. Jayantibhai and his brothers were later dismissed and the case proceeded against Daksha. On October 28, 2019, the trial court granted City a preliminary injunction prohibiting Daksha from operating the motel without a business license. On December 7, 2020, the trial court entered a judgment permanently enjoining Daksha from operating the motel without a business license. We dismissed Daksha's appeal of the preliminary injunction order as moot given the issuance of the permanent injunction. (*City of Long Beach v. Patel* (Aug. 20, 2021, B302478) [nonpub. opn.].) On June 17, 2021, the trial court entered a judgment of contempt against Daksha for 37 violations of the preliminary injunction, ordering her to pay $37,000 to the court within 30 days. Daksha filed a purported appeal of the contempt judgment. As there is no right to appeal a contempt judgment, we treated Daksha's filing as a writ petition and denied relief on the merits. (*City of Long Beach v. Patel* (Jan. 27, 2023, B316807) [nonpub. opn.].) Daksha also appealed the judgment containing the permanent injunction, a judgment which we affirmed. (*City of Long Beach v. Patel* (Mar. 27, 2023, B310344) [nonpub. opn.].)

2019, challenging City's revocation of their business license.[9]
The parties filed briefs prior to the hearing on the petition.  On
September 1, 2021, the trial court heard argument and took the
matter under submission.

On September 20, 2021, the court issued an order denying
the petition.  The court applied the independent judgment
standard of review, stating it did so because City's administrative
action "resulted in the revocation of existing, vested licenses" and
"completely eliminated [the Patels'] ability to operate [their]
business."  The court addressed each of the Patels' challenges to
the license revocation and rejected them all.  To avoid repetition,
we summarize the Patels' various challenges and the bases for
trial court's ruling in our discussion below.[10]  This timely appeal
followed.

---

[9] The Patels did not serve the petition on City until
June 23, 2020.  The petition was not verified, as required by Code
of Civil Procedure sections 1069 and 1086, which prompted City
to file a motion to strike, which was granted by the court with
leave to amend.  The Patels filed a verified first amended petition
on December 7, 2020; the allegations in the amended petition are
the same as those in the original petition.

[10] Among the claims asserted in the Patels' petition was an
allegation that City's revocation of their license violated
Government Code section 65008 because it "conflict[ed] with . . .
City's General Plan dealing with the Housing Element," and was
preempted by Civil Code sections 1940 and 1940.1.  In the trial
court, the Patels did not make any arguments or present any
evidence supporting these claims, and they do not address these
claims in their brief in this appeal.  The Patels have therefore
abandoned these claims.

## DISCUSSION

## A. Standard of Review

Code of Civil Procedure[11] section 1094.5 governs judicial review of a final decision by an administrative agency where, as here, the law required a hearing, the taking of evidence, and the discretionary determination of facts by the agency. (*Id.*, subd. (a).) The petitioner must show that the agency acted without or in excess of jurisdiction, did not afford a fair trial, or prejudicially abused its discretion. (*Id.*, subd. (b).) An agency abuses its discretion if it does not proceed in the manner required by law, renders a decision not supported by the findings, or makes findings not supported by the evidence. (*Ibid.*)

Under the independent judgment test, "abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence." (§ 1094.5, subd. (c).) In *Fukuda v. City of Angels* (1999) 20 Cal.4th 805, our Supreme Court explained that in the "weight of the evidence" test applicable under "independent judgment review," there is "a strong presumption of correctness concerning the administrative findings" which "provides the trial court with a starting point for review—but it is only a presumption, and may be overcome. Because the trial court ultimately must exercise its own independent judgment, that court is free to substitute its own findings after first giving due respect to the agency's findings." (*Id.* at pp. 817-818.)

When a trial court exercises independent judgment, we review its factual findings under the substantial evidence test.

---

[11] All unspecified statutory references are to the Code of Civil Procedure.

19

(*Fukuda v. City of Angels*, *supra*, 20 Cal.4th at p. 824.)  However, we independently determine whether the agency prejudicially abused its discretion by failing to proceed in the manner required by law, such as by failing to comply with required procedures, applying an incorrect legal standard, or committing some other error of law.  (*Environmental Protection Information Center v. California Dept. of Forestry & Fire Protection* (2008) 44 Cal.4th 459, 479.)

## B.    Timeliness of the Petition

Before we reach the merits, we note the Patels' writ petition was timely even though it was not filed in state court until more than a decade after City revoked the motel's business license.  The statute of limitations for filing a petition for writ of administrative mandate is 90 days from "the date on which the decision becomes final."  (§ 1094.6, subd. (b).)  However, pursuant to 28 U.S.C. section 1367(d), this 90-day limitations period stopped running while the Patels' writ petition was pending in federal court, along with an additional 30 days being added to the limitations period after the federal court ultimately dismissed the petition.  (*Artis v. District of Columbia* (2018) ___ U.S. ___ [138 S.Ct. 594, 598, 199 L.Ed.2d 473].)

City's decision to revoke the Patels' business license became final when City served notice of the action on the Patels on April 23, 2008.  (LBMC, § 2.93.050(B)(9).)  Under 28 U.S.C. section 1367(d), the writ petition limitations period stopped running just six days later on April 29, 2008, when the Patels filed their federal court action, until at least December 27, 2019, 30 days after the Ninth Circuit filed its opinion affirming the district court's dismissal of the writ petition.  The Patels filed

20

their writ petition in state court on December 31, 2019. Thus, the Patels' state court writ petition was timely.

## C. The Patels' Claim that the Administrative Record Was Incomplete

The Patels first contend that their due process rights to challenge the revocation via a writ petition were violated because the administrative record prepared by City is incomplete. The Patels identify four categories of documents the administrative record does not contain: (1) a reporter's transcript of the initial license revocation hearing on October 3, 2007, before Lents; (2) "City's orders appointing" the two hearing officers, Lents and Sokol; (3) copies of the ordinances referenced in hearing officer Sokol's report; and (4) documents related to a hearing Sokol presided over in a different proceeding involving the Patels and City, which they claim Sokol relied upon in reaching his decision in the Princess Inn matter.[12]

---

[12] The Patels also contend that the administrative record should have included the following additional documents: "preliminary official proceedings" before hearing officer Sokol; a copy of "the appeal letter" prepared by their counsel initiating the administrative appeal of the license revocation; and "the contract or conditions in [sic] choosing the hearing officer." The Patels did not object to the absence of these documents until their reply brief in the trial court. As a result, the trial court did not address the Patels' arguments regarding these documents. By failing to timely present these claims, the Patels have forfeited their arguments that these documents should have been included in the administrative record and they were prejudiced as a result. (*Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 264.)

21

1.    *The Applicable Law*

"The burden is cast upon the plaintiff . . . in a . . . section 1094.5 proceeding, to produce the administrative record." (*Hothem v. City and County of San Francisco* (1986) 186 Cal.App.3d 702, 704.)  However, where a writ of administrative mandate concerns the decision of a "local agency," such as City, the plaintiff/petitioner can request the agency to prepare the record.  Specifically, section 1094.6, subdivision (c), provides, "The complete record of the proceedings shall be prepared by the local agency or its commission, board, officer, or agent which made the decision and shall be delivered to the petitioner within 190 days after he has filed a written request therefor."  (§ 1094.6, subd. (c).)  "Such record shall include the transcript of the proceedings, all pleadings, all notices and orders, any proposed decision by a hearing officer, the final decision, all admitted exhibits, all rejected exhibits in the possession of the local agency or its commission, board, officer, or agent, all written evidence, and any other papers in the case."[13]  (*Ibid.*)

2.    *Chronology of Administrative Record Preparation*

It is unclear in this case whether the Patels made a request under section 1094.6, subdivision (c) for City to prepare the administrative record, as no such request appears in the

---

[13] City argues that a "partial record of an administrative proceeding" can be sufficient under section 1094.5, subdivision (a).  While section 1094.5, subdivision (a) does provide that parties can submit "[a]ll or part of the record," section 1094.6, subdivision (c) requires cities and other "local agenc[ies]" to prepare a "complete record of the proceedings" if requested to do so.

22

appellate record. In any event, City did prepare the administrative record in 2008 when the Patels filed their federal lawsuit (which included a writ petition cause of action). When the Patels refiled the writ petition in state court, City's counsel attempted on several occasions between December 2020 and June 2021 to discuss with counsel for the Patels using the administrative record already prepared for the federal case in the state court proceeding. When he finally responded to these inquiries on June 29, 2021, the Patels' counsel indicated the administrative record "looked fine," but requested City add to it the LBMC sections cited in the record. City did not add these portions of the LBMC to the administrative record asserting it was "law and not evidence"; ultimately, the trial court granted a request for judicial notice of these portions of the LBMC such that they were part of the record before the trial court and on appeal.

When the Patels later objected before the trial court that the administrative record was incomplete in ways other than the omission of relevant LBMC provisions, the trial court overruled the objection, finding that the Patels had an obligation to "ensure the completeness of the administrative record before the record is submitted to the court for trial," and had "fail[ed] to timely and meaningfully participate in the process of preparing or reviewing the record and by falling to object to the contents of the administrative record." As we explain below, the Patels fail to show the trial court erred in rejecting their challenges to the completeness of the administrative record.

### 3. *Analysis of the Categories of Allegedly Missing Documents*

#### a. *Documents Not Required to Be Included*

All but one of the categories of documents the Patels assert were omitted from the administrative record were not required to be included in the first place. Nothing before us indicates the initial October 3, 2007 hearing before Lents was transcribed. Even if it was, the City administrative action at issue was based on the report and recommendation of hearing officer Sokol, not Lents, as Sokol conducted a de novo hearing. A transcript of the hearing over which Sokol presided was included in the administrative record, as was all the evidence produced at that hearing, the parties' legal briefs, and Sokol's decision, among other documents. There was no error in failing to include a transcript from a prior superseded hearing that was not part of the city council's decision.

Although the Patels contend that sections of the LBMC referenced in hearing officer Sokol's report should have been included in the administrative record, there is no requirement in section 1094.6, subdivision (c) that applicable ordinances or codes be included. In any event, the trial court granted a request for judicial notice of the relevant sections of the LBMC such that they were before the trial court. This claim of error thus fails.

The Patels also contend that the administrative record should have included documents from a separate administrative proceeding involving another hotel (the Club Hotel) operated by the Patels, because hearing officer Sokol referenced the Club

24

Hotel proceedings in his report and recommendation.[14]  The Patels do not specify what documents from the Club Hotel proceeding should have been included in the Princess Inn administrative record.  Nor have the Patels shown that any transcripts or documents from the Club Hotel proceeding were relevant to the Princess Inn proceeding.  The Patels argue that the hearing officer "used" the Club Hotel proceeding "in support of his finding regarding [Jayantibhai] not testifying in this hearing and willfulness in the actions by [the Patels]."  However, the citations they provide to the hearing officer's report and recommendation in making this claim contain no references whatsoever to findings or evidence in the Club Hotel proceeding.

Thus, the Patels point to nothing suggesting the Club Hotel proceeding was properly part of the administrative record in this case.  The Patels focus on the hearing officer's statements that the Patels claimed, in both the Princess Inn and Club Hotel proceedings, that City was required to show "willful" conduct, and that, "as in the Club Hotel consolidated case, the [h]earing

---

[14] According to hearing officer Sokol's report, the Club Hotel proceeding involved City's effort to revoke or suspend Jayantibhai's business license to operate that hotel based on his failure to pay transient occupancy taxes.  The hearing officer indicated the Princess Inn and Club Hotel proceedings were "consolidated," but it is unclear how the two matters were connected procedurally beyond the fact that the same hearing officer presided over both proceedings.  The record does not disclose any overlap in evidence or findings.  The hearing officer indicated in his report in this matter that "[t]here is overlap in some legal issues addressed," but the only common legal issue referenced in the report was whether City needed to show Jayantibhai's conduct was "willful."

25

[o]fficer finds that the actions and inactions of [Jayantibhai] were neither inadvertent nor mistaken" but instead "volitional" because Jayantibhai "participated in or, at minimum, allowed illegal activities to go forward at the Princess Inn, unabated, for a prolonged period of time."  This shows merely that Jayantibhai raised a common legal issue in both proceedings; it does not show that the hearing officer relied on any findings or evidence from the Club Hotel proceeding in concluding that Jayantibhai's actions with respect to the Princess Inn were willful.

      b.     *The Hearing Officer Appointment Order*

The Patels lastly contend documents relating to the appointment of Sokol as a hearing officer should have been included in the administrative record.[15]  City concedes that such a document existed, characterizing it as "merely the order from the city clerk appointing the administrative hearing officer." Although it does not appear this document was used as evidence at the administrative hearing, it arguably should have been included in the administrative record, as either a "notice[ ]" or "order[ ]," or in the catch-all category of "any other papers in the case."  (§ 1094.6, subd. (c).)

That, however, is not the end of the analysis.  To the extent it was required to be included, the Patels bore the burden to provide the trial court with an adequate record.  Thus, the Patels

---

**15** The Patels also complain about the absence of the appointment order for Lents, but that order was not required to be included for the same reason any transcript of the hearing she presided over was not required, namely, the city council did not rely on Lents's report or evidence adduced at the hearing over which she presided.

had an obligation to review the administrative record prepared by City to identify any omissions or other errors. The trial court found that the Patels forfeited this objection to the administrative record by "failing to timely and meaningfully participate in the process of preparing or reviewing the record and by failing to object to the contents of the administrative record." Substantial evidence supports this finding. The original administrative record was prepared in 2008 in connection with the federal proceeding. When the matter was refiled in state court, City's counsel requested input from the Patels' counsel regarding the administrative record several times, beginning on December 9, 2020, and was met with silence. The Patels' counsel did not raise any concerns about the administrative record until June 29, 2021 (approximately 13 years after receiving the original administrative record, and shortly before briefing on the writ petition), and even then said absolutely nothing about the appointment order, focusing instead on the LBMC. Any fault for the omission of the appointment order therefore rests squarely on the Patels.

## D. The Patels' Claim that Hearing Officer Sokol Was Inherently Biased

The Patels contend hearing officer Sokol was inherently biased in favor of City because he had an interest in being appointed as a hearing officer in the future, and this mandates reversal.[16] "When . . . an administrative agency conducts

---

[16] The Patels assert that both hearing officers, Sokol and Lents, had a disqualifying financial incentive to rule in City's favor. However, given that the administrative decision at issue in this matter—the city council's rejection of the Patels'

27

adjudicative proceedings, the constitutional guarantee of due process of law requires a fair tribunal. [Citation.] A fair tribunal is one in which the judge or other decision maker is free of bias for or against a party. [Citations.] . . . [¶] Unless they have a financial interest in the outcome [citation], adjudicators are presumed to be impartial [citation]." (*Morongo Band of Mission Indians v. State Water Resources Control Bd.* (2009) 45 Cal.4th 731, 737.)

The Patels contend that, under *Haas v. County of San Bernardino* (2002) 27 Cal.4th 1017 (*Haas*), it was improper for Sokol to serve as a hearing officer because he was "unilateral[ly] select[ed]" by City "on an ad hoc basis" and his "income from future adjudicative work depend[ed] entirely on the government's goodwill." City argues, and the trial court held, that the Patels waived their claim of implicit bias by failing to raise it before the hearing officer and instead waiting until after they received an unfavorable result. We need not decide that issue, because even if this argument was not waived, we agree with the trial court's alternative finding that the Patels' inherent bias claim fails on the merits.

*Haas* involved an administrative hearing on an appeal from a business license revocation. (*Hass, supra*, 27 Cal.4th at p. 1021.) The county that issued the license appointed a private attorney as the hearing officer. (*Ibid*.) The business owner

administrative appeal from the license revocation—was based only on the evidence presented at the hearing before Sokol and on Sokol's report and recommendation, we address the Patels' claim only as it relates to Sokol. In any event, our conclusion that there is no evidence Sokol had a financial incentive to rule in City's favor applies with equal force to Lents.

28

objected, both before the administrative hearing began and at the outset of the hearing, to the attorney serving as the hearing officer. (*Ibid.*) Testimony at the administrative hearing showed the county had hired the attorney (who had not previously served as a hearing officer) to avoid using again the same temporary hearing officer who had already recommended that the business owner's license be revoked. The county employee who selected the attorney anticipated using the attorney's services in future cases, and believed the attorney also understood the possibility of future work. (*Id.* at pp. 1021-1022.)

The Supreme Court held that "a temporary administrative hearing officer has a pecuniary interest requiring disqualification when the government unilaterally selects and pays the officer on an ad hoc basis and the officer's income from future adjudicative work depends entirely on the government's goodwill." (*Hass*, *supra*, 27 Cal.4th at p. 1024.) The court explained that "while the adjudicator's pay is not formally dependent on the outcome of the litigation, his or her future income as an adjudicator is entirely dependent on the goodwill of a prosecuting agency that is free to select its adjudicators and that must, therefore, be presumed to favor its own rational self-interest by preferring those who tend to issue favorable rulings." (*Id.* at p. 1029.)

*Haas* does not require disqualification whenever an attorney or other private party is appointed by a public entity as a temporary hearing officer and may serve as a temporary hearing officer in the future. Instead, as the court explained, "Counties that appoint temporary administrative hearing officers must do so in a way that does not create the risk that favorable decisions will be rewarded with future remunerative work." (*Hass*, *supra*, 27 Cal.4th at p. 1020.)

29

In *Thornbrough v. Western Placer Unified School Dist.* (2013) 223 Cal.App.4th 169 (*Thornbrough*), the court rejected a claim that *Haas* required disqualification of a hearing officer presiding over an administrative appeal of an employee's termination by a school district. In that case, after 12 days of hearings, the employee's counsel filed a written motion requesting "the hearing officer to disclose (1) '[p]ast or present representation of school districts,' (2) '[p]ast or present associations' with the [school d]istrict's lawyers, and (3) the 'contractual arrangement' with the [school d]istrict." (*Id.* at p. 185.) "The hearing officer . . . stated on the record that he had been hired 'as an independent hearing officer' by the [school d]istrict, had never previously performed any services for the [school d]istrict or any of its principals, and had never met any [school d]istrict [b]oard members." (*Id.* at pp. 185-186.) The hearing officer denied the motion on the ground it was untimely, but also stated he was " 'aware of no potential or actual conflicts of interest that require disclosure in this matter.' " (*Ibid.*)

The trial court found that the employee's motion to disclose was untimely, and also that there was no due process violation in any event, and the Court of Appeal affirmed. (*Thornbrough, supra,* 223 Cal.App.4th at p. 187.) As to whether the record showed a due process violation, the court held "that there is nothing in the record to rebut the presumption that the hearing officer was 'a "reasonably impartial, noninvolved reviewer" ' as required by due process. [Citation.]" (*Id.* at p. 187.)

The trial court here concluded that *Haas* was inapplicable because, "Unlike *Haas,* there is no evidence in the administrative record about . . . City's selection process for hearing officers," including a lack of any evidence to show that the hearing officer

30

"must favor the City to continue to receive work," such that the Patels' "argument is based on pure speculation." We agree. We start from a "presumption of impartiality [that] can be overcome only by specific evidence demonstrating . . . a particular combination of circumstances creating an unacceptable risk of bias." (*Morongo Band of Mission Indians v. State Water Resources Control Bd.*, *supra*, 45 Cal.4th at p. 741.) There is no evidence in the record about how Sokol was appointed, whether Sokol had any "future employment prospects" with City, and if Sokol did want further employment whether it "depend[ed] entirely on [City's] goodwill."[17] Given the presumption of impartiality, this lack of evidence is fatal. (See *Thornbrough*, *supra*, 223 Cal.App.4th at p. 188.)

## E. The Patels' Claim that the Hearing Officer Was Actually Biased

The Patels contend that statements made by hearing officer Sokol at two points during the administrative hearing show that he was actually biased in favor of City. The Patels raised no objection to these statements at the time they were made, and the trial court found the failure to object during the administrative proceedings forfeited this argument. We need not address forfeiture, because even if this claim was not forfeited,

---

[17] The only reference in the record to how Sokol was appointed was an unsworn statement by City's counsel that Sokol was "selected . . . by random lot." We do not treat this statement as evidence as to how Sokol was appointed, and even if we did it does not carry the Patels' burden to demonstrate an unacceptable risk of bias. The lack of any further information in this regard stems from the Patels' own failure to timely seek its inclusion in the administrative record.

we agree with the trial court's alternative finding that the statements at issue did not show bias.

In a quasi-judicial administrative hearing, principles of procedural due process require "a 'reasonably impartial, noninvolved' reviewer.  ([*Nasha v. City of Los Angeles* (2004) 125 Cal.App.4th 470,] 483, italics omitted.)  While this standard does not demand the same degree of impartiality required of a judicial officer, . . . it precludes participation by a person who has demonstrated actual bias.  (*Ibid.*)  In order to prevail on a claim of bias, the plaintiff 'must establish " 'an unacceptable probability of actual bias on the part of those who have actual decisionmaking power over their claims.' " ' (*Ibid.*)" (*Attard v. Board of Supervisors of Contra Costa County* (2017) 14 Cal.App.5th 1066, 1083.)

The Patels first rely on statements Sokol made during testimony by Officer Lee.  Sokol stated, "What I think is gonna happen with this officer and other witnesses is going to be an accumulation of potentially very damning information, and much of it, in effect, is cumulative.  I mean, what he's saying, if this is—if this alone—if this alone isn't sufficiently deflected, I don't know what the licensee is going to do.  I'm wondering."  The trial court found, and we agree, that Sokol was commenting on testimony he had observed and his statements did not demonstrate any bias.  (See *People v. Perez* (2018) 4 Cal.5th 421, 441 ["a trial judge may hear a case even if he or she has expressed an adverse impression of a party that was 'based upon actual observance of the witnesses and the evidence given during the trial of an action,' " quoting *Kreling v. Superior Court* (1944) 25 Cal.2d 305, 312].)  Sokol's comments do not suggest he had pre-judged the evidence, as he described the testimony as

32

"*potentially* very damning" (italics added) and noted additional rebuttal evidence might be forthcoming from the Patels that could "deflect" Officer Lee's testimony. Further, Sokol made these comments in the context of a discussion about whether additional police officer testimony might be cumulative; after City's counsel indicated she wanted to adduce additional evidence, Sokol asked the Patels' counsel if the Patels intended to deny the activity and knowledge of it, and counsel responded yes, at which point Sokol stated, "All right. I just wanted to check."

The Patels also rely on Sokol's statement in his decision that he viewed Jayantibhai's failure to testify as "<u>very</u> troubling." The Patels argue that his comment demonstrated bias because Daksha had testified that Jayantibhai did not speak English well and she was testifying on behalf of herself and Jayantibhai. The trial court found that Sokol was commenting about a lack of evidence and his statement did not demonstrate any bias.

We agree. In his decision, Sokol acknowledged that Daksha indicated she was testifying for both herself and Jayantibhai, but he noted that Jayantibhai was present during the hearing before Sokol and had testified at the prior hearing on October 3, 2007. Sokol also elaborated on his statement as follows: "[T]he fact of the matter is that [Jayantibhai] is the focal point of the charges. The impression the [h]earing [o]fficer has is that [Jayantibhai] is running the show more so than anyone else, calling the shots more so than anyone else, and thus the testimony of his wife of their efforts to operate a habitable, clean and safe hotel—and the money and time spent to do so, but without any documentary proof—falls short of what the [h]earing [o]fficer expected to hear and to see, including to challenge what Detective Rebbeck described, to actually explain the 41 police

33

calls from January through September 2007, to show that there [has] been [a] real effort to avoid illegal conduct at the Princess Inn (and demonstrate it), that they are running a motel not an apartment complex, and even that the hotel registration (Exhibit 21) is authentic."

Sokol's conclusion that Jayantibhai was "the focal point of the charges" is amply supported by the record, and indeed Jayantibhai personally held the business license which was at issue in the matter. We further note that even if Jayantibhai had limited English language ability, nothing prohibited him from testifying through an interpreter. Given Jayantibhai's decision not to testify, the hearing officer's comment in a civil administrative hearing about the lack of evidence rebutting testimony from other witnesses about Jayantibhai does not demonstrate actual bias.

## F. The Patels' Claim that the City Council Was Required to Conduct the Entire Hearing

The Patels acknowledge that the city council acted in accordance with LBMC section 2.93.050 when it adopted the recommendation prepared by hearing officer Sokol to revoke the motel's business license. Under LBMC section 2.93.050(B)(8), when the city council appoints a hearing officer to preside over an administrative hearing, as occurred here, "the [c]ity [c]ouncil may adopt, reject or modify the recommended decision. In its discretion, the [c]ity [c]ouncil may take additional evidence at the hearing or refer the case to the [h]earing [o]fficer with instructions to consider additional evidence."

The Patels, however, claim this procedure violated their due process rights. They contend, "The [United States] Supreme Court long ago decided that in a judicial or quisi [*sic*] judicial

34

proceeding, the judicial decisionmaker cannot merely adopt the recommendations of a third party hearing officer but under the Due Process Clause must consider the evidence and argument that was presented to the hearing officer." Their argument on this point consists of citing two cases—*Morgan v. United States* (1936) 298 U.S. 468 [56 S.Ct. 906, 80 L.Ed. 1288] (*Morgan I*) and *Morgan v. United States* (1938) 304 U.S. 1 [58 S.Ct. 773, 80 L.Ed. 1129] (*Morgan II*)—without any discussion.

LBMC section 2.93.050 mirrors Government Code section 11517, which governs administrative hearings held by state agencies. Under Government Code section 11517, a state agency can hear a "contested case" itself (*id.*, subd. (a) & (b)) or have the case heard by "an administrative law judge," who is required to prepare a proposed decision (*id.*, subd. (a) & (c)(1)). When an administrative law judge hears the matter, the agency can take various actions, including adopting the proposed decision or rejecting it and deciding the matter itself, "with or without taking additional evidence." (*Id.*, subd. (c)(2)(A)-(E).) In *Hohreiter v. Garrison* (1947) 81 Cal.App.2d 384, 400 (*Hohreiter*), the Court of Appeal rejected a constitutional challenge to the procedure set forth in Government Code section 11517 based on *Morgan I* and *Morgan II*.[18] City urges that based on the analysis in *Hohreiter*,

---

[18] In *Hohreiter*, the appellant filed a writ petition challenging the revocation of his insurance license by the Insurance Commissioner. (*Hohreiter, supra*, 81 Cal.App.2d at pp. 386-387.) As authorized by Government Code section 11517, the commissioner had designated a hearing officer who held an evidentiary hearing and prepared a report and recommendation to revoke the license, which recommendation the commissioner adopted. (*Hohreiter*, at p. 386.) The appellant claimed, based on

35

we should conclude that *Morgan I* and *Morgan II* are similarly inapplicable to administrative proceedings under LBMC section 2.93.050.

  *Morgan I* and *Morgan II* do not stand for the broad proposition advanced by the Patels, and do not prohibit the procedure established by LBMC section 2.93.050 under which the city council can appoint a hearing officer and then adopt the recommendation of the hearing officer. *Morgan I* and *Morgan II* both involved challenges to an order by the Department of Agriculture (Department) fixing rates for buying and selling livestock. (*Morgan I*, *supra*, 298 U.S. at p. 471; *Morgan II*, *supra*, 304 U.S. at p. 13.) The Department issued the order under a statute that authorized the secretary of agriculture to issue such an order after a "full hearing." (*Morgan I*, at p. 473, citing 7 U.S.C. § 211.) In *Morgan I*, the court concluded, based on this statutory requirement for a "full hearing," that the lower court erred in striking the plaintiffs' claim "that the [s]ecretary made the rate order without having heard or read any of the evidence" and instead acted only on information "derived from consultation with employees of the Department." (*Id.* at p. 478.) The court explained, "The requirement of a 'full hearing' has obvious reference to the tradition of judicial proceedings in which evidence is received and weighed by the trier of the facts. The 'hearing' is designed to afford the safeguard that the one who decides shall be bound in good conscience to consider the

---

*Morgan I* and *Morgan II*, that his procedural due process rights were infringed because the "commissioner adopted the findings and proposed decision of the hearing officer, without reading or hearing the evidence produced before the hearing officer." (*Hohreiter*, at p. 393.)

36

evidence, to be guided by that alone, and to reach his conclusion uninfluenced by extraneous considerations which in other fields might have play in determining purely executive action." (*Id.* at p. 480.) The court remanded the matter for consideration of the claim that the plaintiffs had not been provided with a "full hearing." (*Id.* at p. 482.)

*Morgan I* does not state a rule invalidating LBMC section 2.93.050. First, in *Morgan I* the required statutory hearing did not take place at all, whereas here one did before the hearing officer. (*Morgan I*, *supra*, 298 U.S. at pp. 477-478.) *Morgan I* is further inapplicable because, as the *Hohreiter* court observed, "In the federal statute . . . involved there was no statutory officer clothed with statutory powers comparable to a hearing officer as provided in section 11517 of our Government Code. There was no provision at all for weighing the evidence, except by the secretary, and there was no indication that anyone except the secretary ever weighed the evidence." (*Hohreiter*, *supra*, 81 Cal.App.2d at p. 401.)

*Morgan II* is also inapplicable, but for different reasons. In that case, the court concluded that the plaintiffs had not been provided with the required "full hearing" because they had not been fairly advised of the substance of the Department's claims against them. (*Morgan II*, *supra*, 304 U.S. at pp. 18-19.) The court concluded, "The right to a hearing embraces not only the right to present evidence, but also a reasonable opportunity to know the claims of the opposing party and to meet them," and "[n]o such reasonable opportunity was accorded [the plaintiffs]." (*Id.* at pp. 18, 19.) Other than statements at oral argument, "the Government formulated no issues and furnished [the plaintiffs] no statement or summary of its contentions and no proposed

37

findings" and further refused a "request that the examiner prepare a tentative report, to be submitted as a basis for exceptions and argument." (*Id.* at pp. 16-17.) Here, in contrast, the Patels unquestioningly received notice of City's claims and had ample opportunity to rebut those claims, including at the initial hearing, the de novo appellate hearing from the ruling in the initial hearing, and the ultimate hearing before the city council following the written recommendation of hearing officer Sokol.

In conclusion, the Patels' argument premised on *Morgan I* and *Morgan II* is unavailing. As they provide no other support for their due process claim, the claim fails.

## G. The Patels' Claim Regarding City's Failure to Provide Notice to the Owners of the Motel Property

After City rested its case in the administrative hearing, the Patels objected to the proceedings on the ground the owners of the motel property, Jayantibhai's brothers Dipak and Pravin Patel, had not been provided with notice of the hearing. The hearing officer requested briefing on the issue and ultimately rejected this argument in his decision. The hearing officer concluded that notice to the landowners was not required because "Here, the way the [l]icensee is operating the business on the property is what is under review. . . . City is not seeking to take the property away from its actual owners, who turn out to be someone other than the [l]icensee." The hearing officer also observed that Daksha testified she had informed the landowners about the hearing. The trial court likewise concluded that notice to the landowners was unnecessary because "City's administrative action affected only [Jayantibhai] and his business license[ ]." The trial court also found that Daksha and

38

Jayantibhai lacked standing to assert the rights of the landowners.

The Patels contend that the landowners were entitled to notice both under the LBMC and principles of procedural due process. We reject this argument because Daksha and Jayantibhai lack standing to assert the purported rights of the landowners to notice of the administrative proceedings. " 'As a general rule, a third party does not have standing to bring a claim asserting a violation of someone else's rights. [Citation.]' [Citation.]" (*People ex rel. Becerra v. Superior Court* (2018) 29 Cal.App.5th 486, 499.) "Although constitutional rights are 'generally personal' (*People v. Hazelton* (1996) 14 Cal.4th 101, 109 . . .), the United States Supreme Court has departed from this rule when the third-party right asserted by the litigant is 'inextricably bound up with the activity the litigant wishes to pursue' and when some 'genuine obstacle' prevents the absent party from asserting his or her own interest. (*Singleton v. Wulff* (1976) 428 U.S. 106, 114, 116 [96 S.Ct. 2868, 49 L.Ed.2d 826] . . . .)" (*Lewis v. Superior Court* (2017) 3 Cal.5th 561, 570.)

Regardless of whether the rights of the landowners were inextricably bound up with Daksha's and Jayantibhai's continued operation of the motel (a claim we do not decide),[19] there was no

---

[19] We note the Ninth Circuit found in the Patels' federal lawsuit that the rights of the landowners and license holders were not inextricably bound together. In that case, the landowners themselves (who were parties) asserted City had violated their constitutional rights by failing to give them notice of the administrative hearing. The Ninth Circuit rejected that claim, holding, "Pravin and Dipak, as owners of the Inn, did not have a property interest in Jayantibhai Patel's license to operate

"genuine obstacle" to the landowners themselves asserting their interests. During the administrative hearing, Daksha testified that the landowners were living in a house in Long Beach and came to the motel frequently, some weeks every day and some weeks two or three days. Daksha further testified that she had talked with the landowners about City's efforts to revoke the motel business license and gave them documents regarding the proceedings, and they knew about the hearing. Thus, there was no obstacle to the landowners seeking to become involved in the administrative proceedings—they simply chose not to become involved. Under these circumstances, the Patels do not have standing to assert the landowners' purported rights. (*Matrixx Initiatives, Inc. v. Doe* (2006) 138 Cal.App.4th 872, 881.)

## H. The Patels' Claims Related to the Constitutionality of LBMC Section 5.48.010(E)

At the time the administrative proceedings began, subdivision (A) of LBMC section 5.48.010 required motel and hotel operators to keep a register with the name and address of each guest, and subdivision (E) allowed law enforcement to demand access to the register "at any reasonable hour . . . for the purpose of determining that the provisions of this section are met."

The Patels challenged the constitutionality of this LBMC section in the administrative hearing before hearing officer Sokol, who asked for and received briefing on the issue. In his decision, Sokol stated it was "questionable" whether it was appropriate for

---

the Inn and therefore did not have a right to procedural due process." (*Patel et al. v. City of Long Beach* (9th Cir. 2014, No. 09-56699] [nonpub. opn.].)

40

him to consider the constitutional issue but found that the provision was "a reasonable ordinance geared toward assisting the local government in seeking to assure that the operator of a hotel or motel is complying with subsections ([A]) through ([D]) [of LBMC section 5.48.010]." Sokol indicated any facial challenge to LBMC section 5.48.010(E) was for a court to consider, and as applied here there was no evidence of any "specific, overly intrusive search."

Several years later, in 2015, the United States Supreme Court held that a similar provision in the Los Angeles Municipal Code compelling " '[e]very operator of a hotel to keep a record' containing specified information concerning guests and to make this record 'available to any officer of the Los Angeles Police Department for inspection' on demand" was "unconstitutional because it penalizes [hotel operators] for declining to turn over their records without affording them any opportunity for precompliance review." (*City of Los Angeles v. Patel* (2015) 576 U.S. 409, 412 [135 S.Ct. 2443, 192 L.Ed.2d 435].)

The Patels contend that City's revocation of their business license should be reversed because Sokol purportedly wrongly concluded that LBMC section 5.48.010(E) was reasonable under the Fourth Amendment. But City did not seek to revoke the license due to any alleged violation of former LBMC section 5.48.010(E), nor did the hearing officer conclude that the Patels had violated the provision. The hearing officer's comments about the constitutionality of LBMC section 5.48.010(E) were therefore irrelevant to the result.

The Patels further assert that registration cards obtained pursuant to the former ordinance were improperly introduced during the hearing. This is inaccurate; no such registration slips

41

were introduced in the hearing before Sokol.  While City did introduce into evidence two guest registration slips dated June 23, 2007, City did not obtain these records by invoking former LBMC section 5.48.010(E).  Instead, Jayantibhai voluntarily produced these slips at the initial administrative hearing on October 3, 2007.  Thus, no reversible error occurred.

## I.  The Patels' Claims Regarding Redacted Police Records and the Proportionality of Revocation as a Sanction

The Patels title their last argument, "The Evidence Does Not Support Revocation of the Business License," but in substance it is a challenge to the hearing officer's admission of several specific documents.[20]  The documents are records of police calls involving the Princess Inn which Officer Lee testified about, from which City's counsel redacted personal information of individuals identified in the records.  The hearing officer indicated that he gave the documents limited weight because of the redactions.  The Patels contend that, without this personal information, they were unable to determine whether or not the subjects of the records were prosecuted or, if so, what happened.

We review the trial court's ruling on the admissibility of evidence at an administrative hearing for abuse of discretion. (*Cassidy v. California Bd. of Accountancy* (2013) 220 Cal.App.4th

---

[20] To the extent the Patels do contend City's revocation of their license was not supported by substantial evidence, they have forfeited the argument by failing to present in their brief a full factual summary that includes the evidence favorable to City. (*Overaa Construction v. California Occupational Safety & Health Appeals Bd.* (2007) 147 Cal.App.4th 235, 251.)

42

620, 629; *Molenda v. Department of Motor Vehicles* (2009) 172
Cal.App.4th 974, 986.)  We first note that the Evidence Code does
not apply to the hearing at issue; instead LBMC section 2.93.030
governed the use of evidence at the hearing.  LBMC section
2.93.030 provides, in relevant part:  "Any relevant evidence shall
be admitted if it is the sort of evidence on which responsible
persons are accustomed to rely in the conduct of serious affairs,
regardless of the existence of any common law or statutory rule
which might make improper the admission of such evidence over
objection in civil actions."  Government Code section 11513
includes this same standard in its subdivision (b), which governs
administrative hearings held by state agencies.

The Patels make no argument regarding how the redacted
records did not meet this lower standard.  Furthermore, the
grounds for the Patels' objection—that they could not determine
whether the subjects of the records had been prosecuted—fails to
demonstrate any prejudice from the admission of the redacted
documents.  City submitted the records to show that its police
department had to respond to numerous service calls involving
the Princess Inn.  City did not offer these records to show that
any individuals had been prosecuted or convicted, and thus it was
not pertinent whether criminal proceedings resulted and, if so,
how they turned out.[21]

The Patels argue that the introduction of the redacted
records violated their due process rights, but the cases they rely
upon involve situations where courts based their decisions on

---

[21] City did offer specific evidence showing that one motel
resident, Milo, had pleaded no contest to a drug offense.  The
Patels did not dispute this evidence.

evidence which was not disclosed to a party. (See, e.g., *Vining v. Runyon* (11th Cir. 1996) 99 F.3d 1056, 1057 [court relied on evidence it reviewed ex parte and in camera]; *Abourezk v Reagan* (D.C. Cir. 1986) 785 F.2d 1043, 1060-1061 [same]; *Lynn v Regents of the University of California* (9th Cir. 1981) 656 F.2d 1337, 1345-1346 [same].) That is not the situation here, as the hearing officer did not rely on any of the redacted information; nor could he have done so because, like the Patels, he received only the redacted documents.

Finally, under the same argument heading, the Patels contend that the City should have considered a sanction less drastic than revoking the Patels' business license, such as modifying the license. The trial court rejected this argument, concluding that identifying alternative sanctions City could have imposed does not demonstrate that the sanction City did impose was an abuse of discretion. We agree. In the context of an administrative action by a public entity, "there is no legal requirement to explicitly discuss, consider, and explain the rejection of all forms of discipline short of the one selected." (*Oduyale v. California State Bd. of Pharmacy* (2019) 41 Cal.App.5th 101, 115.) The Patels make no argument that City's decision to revoke their business license is not supported by the hearing officer's findings or that those findings were not supported by the weight of the evidence. (§ 1094.5, subds. (b) & (c); *Fukuda v. City of Angels, supra*, 20 Cal.4th at pp. 817, 818.) Given the evidence adduced before hearing officer Sokol, we find no abuse of discretion in the sanction imposed. The Patels' argument is therefore meritless.

44

## DISPOSITION

The trial court's judgment denying the Patels' petition for writ of administrative mandate is affirmed. City shall recover its costs on appeal.

NOT TO BE PUBLISHED

WEINGART, J.

We concur:

ROTHSCHILD, P. J.

BENDIX, J.